UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No. _____ – Civ

VALENTINA VILLALOBOS,
**PLAINTIFF,**

VS.

FLORIDA COUNCIL AGAINST
SEXUAL VIOLENCE, INC.
**DEFENDANT.**

## COMPLAINT

Plaintiff, VALENTINA VILLALOBOS, through counsel sues Defendant, FLORIDA COUNCIL AGAINST SEXUAL VIOLENCE, INC ("FCASV") and states as follows:

### JURISDICTION

1. The jurisdiction of the Court over matters in this Complaint is founded upon 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

2. Villalobos is a US Citizen and resides in Hillsborough County, Florida.

3. Florida Council Against Sexual Violence, Inc. is a Florida Corporation with its principal office located in Tallahasee, Leon County, Florida.

### VENUE

4. The facts related in this Complaint occurred throughout Florida, in the Middle District of Florida; therefore, venue is appropriate in this Court.

### ADMINISTRATIVE EXHAUSTION

5. On or about January 28, 2020, Villalobos filed a EEOC Charge docketed as 511-2020-01715 alleging discrimination based Gender (Title VII), Retaliation. Exhibit A.

6. Villalobos cross-filed that charge with the Florida Commission on Human Relations.

7. On or about July 24, 2020, the EEOC issued a Right to Sue letter. Exhibit B.

## Factual Background

8. Villalobos is a licensed Florida attorney in good standing since 2012.

9. She is a woman with some Hispanic lineage.

10. Florida Council Against Sexual Violence, Inc. ("FCASV") is a statewide nonprofit organization committed to victims and survivors of sexual violence and the sexual assault crisis programs that serve them.

11. Villalobos was employed as a staff attorney on the "Legal Assistance to Victims" grant (LAV). This was a 3-member team consisting of her supervisor, a victim advocate and herself. Villalobos was the only full-time attorney assigned to LAV. Her supervisor, who was also an attorney, was under LAV for approximately 40% of her responsibilities, and the victim advocate worked part time.

12. Villalobos attended all monthly staff meeting by phone as the majority of the staff members were located in Tallahassee and FCASV has a tight travel budget. As such, Villalobos only attended staff meetings in Tallahassee when she was invited to do so, which only occurred 3 or 4 times.

13. Villalobos was primarily responsible for providing legal advice and direct representation to victims of sexual assault.

14. She had no legal assistant and was responsible for all case and client management activities.

15. In November 2018, Villalobos received a performance evaluation and received all 4's on her evaluation which was equal to exceeding expectations. In fact, the only negative feedback was that Villalobos sometimes took on too much work.

16. During this evaluation, Villalobos learned for the first time that FCASV was looking to hire a supervising attorney. Villalobos expressed interest for this management position and was told that they were looking for someone with management experience. Villalobos requested the opportunity for management training, but her request was never acknowledged.

17. Six months later, in May of 2019, Villalobos learned that FCASV was going to hire a supervising attorney. Villalobos inquired about the position and was simply told not to bother to apply as FCASV was looking for prior management experience, even though Villalobos had requested additional management experience and responsibility.

18. On May 20, 2019 the job posting went up and there was no mention of prior management experience being a required qualification.

19. The following day, Villalobos again inquired about the supervisor position with Theresa Prichard and was told that FCASV was looking for someone more "invested" in FCASV.

20. Villalobos reminded Theresa that she was in Tampa Bay and was not invited to Tallahassee often to interact with the other staff members. She also reminded Theresa of her interest in advancing that was expressed six months earlier but that no one responded.

21. On May 22, 2019, Theresa irritably advised Villalobos to apply for the supervising attorney stating, "If you want the job, just say you want the job and submit your resume and cover letter." This was a 180 degree reversal by Theresa who just days before had advised Villalobos that she was not qualified and should not even bother applying.

22. Villalobos submitted her resume and cover letter on June 10, 2019.

23. FCASV interviewed Villalobos on July 12, 2019 at Villalobos's office for the supervising attorney position.

24. On July 29, 2019 Villalobos was informed that she did not get the supervising attorney position.

25. Rather, a male, Leo Vera ("Vera"), was hired.

26. Vera was just licensed in Florida in 2016 and his prior experience was as a staff attorney and he had little to no management experience.

27. The FCASV director, Jennifer Dritt later told Villalobos that Vera's "management" experience consisted of managing interns and administrative staff, not other lawyers.

28. On August 20, 2019, an email is sent to all staff announcing Vera as the supervising attorney.

29. Following Vera's hiring, Villalobos learns that staff members in Tallahassee were provided vision coverage through the Capital Health Plan but that Villalobos was never provided this option. After Valentina raised a question regarding the vision insurance, she was informed that FCASV would have to determine how much it would cost under Florida Blue, which was the insurance Villalobos had under FCASV.

**EVIDENCE OF DISCRIMINATION**

30. Throughout Villalobos's employment, she was often shuffled off to the side. As one of two attorneys on staff, she was not invited to be involved in the day to day operations of FCASV which primarily occurred in Tallahassee.

31. However, her supervisor, Theresa, went frequently to Tallahassee to staff meetings.

32. Villalobos, as a remote employee, was provided no legal administrative support and was solely responsible for all legal proceedings and files.

33. This role that Villalobos was placed in, was then used against her as not having any management experience when the supervising attorney position was announced.

34. Although Villalobos requested additional training and additional responsibilities within FCASV 6 months prior to the job posting, her requests were simply ignored.

35. FCASV refused to support Villalobos's efforts to become board certified. Board Certification is reserved for Florida attorneys who have been licensed for at least 5 years. At this time, Vera is not eligible for Board Certification however Villalobos did become Board Certified.

36. It was only after Villalobos expressed interest in the supervising attorney position did FCASV through, Theresa and Jen, begin creating pretexual reasons on why Villalobos was not offered the supervising attorney position and why she was ultimately terminated on October 8, 2019.

37. It should be noted that FCASV never warned Villalobos that any of her conduct was wrong.

38. None of the reasons or explanations provided to Villalobos about why she did not qualify for the supervising attorney position were ever communicated to her or addressed to her at a performance evaluation. It was only after the fact that these reasons were stated and only after Villalobos pressed as to why she was not qualified for the supervising attorney position.

39. Villalobos was and is a very outspoken woman who questions everything. These behaviors are often seen as negative stereotypes of women in the workplace.

40. While Villalobos was kept isolated from FCASV, she continued to receive high performance review marks and it was even noted that she sometimes took on too much work. Based upon her reviews, a conclusion can be drawn that Villalobos was more than capable and qualified.

41. Villalobos was terminated on October 8, 2019.

42. Consistently, Villalobos was held back by her supervisors and essentially pigeonholed into a position that did not allow for her to grow professionally. That lack of growth was then held against her when it was time to consider hiring a supervising attorney even though Villalobos repeatedly requested additional responsibility within FCASV.

43. Further, her outspoken and aggressive personality is not a trait many associate with women. However, such traits are often considered desirable in men.

44. Considering that FCASV selected a male, with little management experience, over Villalobos who actually has been a member of the Florida Bar longer than Vera, demonstrates classic forms of stereotypes, prejudices, and discrimination.

45. Further, Villalobos learned that she had not received certain medical benefit that others within the organization had received, specifically vision insurance.

46. Villalobos began to ask questions inside and outside of FCASV regarding whether she was entitled to vision insurance.

47. FCASV informed her that she was not entitled to insurance because she was not based in Tallahassee.

48. She was also reprimanded for researching whether FCASV had violated any employment laws by refusing to provide her with vision insurance.

49. Shortly after her questioning why she had not received vision insurance, Villalobos was fired.

**COUNT I**
**Title VII Discrimination**
**on the Basis of Gender**

50. Paragraphs 1-49 are incorporated by reference as if set forth herein at length.

51. Villalobos, a woman, is a member of a protected class

52. Defendant is an employer for purposes of the Civil Rights Act.

53. Villalobos was qualified for the job for which she was terminated and was also qualified for the job of supervising attorney.

54. Villalobos suffered adverse employment actions by not being promoted to supervising attorney and for ultimately being terminated.

55. These adverse actions occurred under circumstances giving rise to an inference of gender

discrimination.

56. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

57. As a result of Defendants' discriminatory conduct, Villalobos has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

58. Villalobos seeks all remedies and damages permitted under the Title VII, including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

WHEREFORE, Villalobos respectfully requests this Honorable Court to enter judgment in her favor, award fees and costs, interest, and any other relief this Court deems just and proper.

## COUNT II
## Violation of Florida Civil Rights Act (Gender)

59. Paragraphs 1-49 are incorporated by reference as if set forth herein at length.

60. Villalobos, a woman, is a member of a protected class.

61. Defendant is an employer for purposes of the Florida Civil Rights Act.

62. Villalobos was qualified for the job for which she was terminated and was also qualified for the job of supervising attorney.

63. Villalobos suffered adverse employment actions by not being promoted to supervising attorney and for ultimately being terminated.

64. These adverse actions occurred under circumstances giving rise to an inference of gender discrimination.

65. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

66. As a result of Defendants' discriminatory conduct, Villalobos has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

67. Villalobos seeks all remedies and damages permitted under the Florida Civil Rights Act, including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## COUNT III
### Retaliation

68. Paragraphs 1-49 are incorporated by reference as if set forth herein at length.

69. Villalobos participated in a protected activity by seeking information as to why she was excluded from the vision insurance plan.

70. FCASV retaliated against her by terminating her employment.

71. FCASV's decision to terminate Villalobos occurred shortly after they learned of her questioning the legality of FCASV's failure to include Villalobos on the vision insurance plan.

WHEREFORE, Villalobos respectfully requests this Honorable Court to enter judgment in her favor, award damages, attorney fees and costs and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

72. Jury trial is demanded on all counts.

**Grady Legal PA**
On Behalf of the Plaintiff
1645 SE 3rd Ct. #204
Deerfield Beach, FL 33441
754.333.0313
/s/ Jacqueline A. Grady_____
Jacqueline A. Grady
FBN 635871
jackie@gradylegal.com